S93A1334. FIRST REBECCA BAPTIST CHURCH,
INC. v. ATLANTIC COTTON MILLS & RIVOLI CROSSING
BAPTIST CHURCH, INC.

(440 SE2d 159)

HUNT, Presiding Justice.

This appeal involves a three-way dispute over ownership of certain property, and raises issues concerning the applicability of a reverter clause in a deed to a charitable group. Atlantic Cotton Mills brought this action seeking a declaration that because of the reverter clause, it is the owner of title to property which it had given to the Rebecca Baptist Church. Atlantic named, as defendants, First Rebecca Baptist Church, Inc. and Rivoli Crossing Baptist Church, Inc., two congregations that made competing claims to the property. The trial court found in favor of Rivoli, holding first, that it was the same congregation as the original Rebecca and second, that the reverter clause was not activated by its move to Rivoli Crossing. We affirm the trial court's first holding, but reverse the second because we conclude that the reverter clause was indeed activated, so that Atlantic is the owner of title to the property.

The land was conveyed from Atlantic to "Rebecca Baptist Church" pursuant to a 1947 deed. The deed contains a reverter clause which provides as follows:

> The said Second Parties [Rebecca Baptist Church] to have and to hold the said lot of land and its appurtenances forever, in trust for the sole use, benefit and enjoyment of Rebecca and the members thereof, the same to be used as a place for divine worship by the congregation of said church, in fee simple, but only so long as said lot is used for such church purposes, it being expressly provided that if the said lot of land should ever cease to be used for such church purposes, then the title thereto, that is all the right, title and interest hereby conveyed, shall immediately revert to the First Part, its successors and assigns.

Until 1979, the congregation known as Rebecca Baptist Church continuously used the land as its place of worship. Then, the majority of that congregation voted to move to Rivoli Crossing. The minority continued to worship on the subject site with the permission of the Rivoli group. The minority took the name "First Rebecca Baptist Church" after the majority chose as its name "Rivoli Crossing."

1. The trial court correctly determined under OCGA § 14-5-43 (presumptive rule of majority representation in church schism cases) that the majority which formed the church now known as Rivoli Crossing is the "Rebecca Baptist Church" referred to in the 1947

deed. See *Jones v. Wolf*, 244 Ga. 388 (260 SE2d 84) (1979).

The trial court also correctly decided that the uncontroverted evidence does not support First Rebecca's claim of title either by gift or adverse possession.

2. We disagree, however, with the trial court's interpretation of the reverter clause, and its conclusion that the clause was not activated.

The trial court found that Rivoli did not activate the reverter clause by allowing the current First Rebecca Baptist Church to continue to worship at the subject site because First Rebecca's use of the property benefitted Rivoli. However, the language of the reverter clause is clear that the property is to be used for the *"sole use*, benefit and enjoyment of Rebecca [now Rivoli] and the *members thereof*, the same to be used as a place of divine worship by the congregation of *said church*," and that title reverts when the property is not used for "*such* church purposes (emphasis supplied)." The use of the property by the minority which formed its own congregation, now First Rebecca Baptist Church, is not a permitted use of the property by Rivoli under the plain language of the reverter clause, even though that use is with the permission of the majority, the separate entity Rivoli Crossing. Accordingly, the property reverted to Atlantic in 1979 when it was no longer used by the majority for its church purposes.

3. Because the trial court decided that the clause was not activated, it did not reach Rivoli's argument that the clause was unenforceable as a matter of law. In view of our holding in Division 2, we now address that issue. Citing *Wills v. Pierce*, 208 Ga. 417 (67 SE2d 239) (1951), Rivoli correctly states that the type of forfeiture at issue in this case is generally invalid as an impermissible restraint on alienation. Id. at 418-419. See generally OCGA §§ 23-1-23; 44-6-21; 44-6-41.

However, Georgia, like the majority of jurisdictions which have addressed this issue, recognizes an exception to the general rule where property is transferred to a charitable group for charitable purposes. *Rustin v. Butler*, 195 Ga. 389, 391 (24 SE2d 318) (1943) (upholding a reverter clause where the deed specified that a school was to be built on the property, and a forfeiture would result should the property not be used for school purposes). The reasoning behind the exception appears to be that

> [S]ince a donor may make a gift for charitable purposes perpetual in duration, he may, as a corollary of this right, and in order to effectuate his primary purpose, impose a condition that the gift property shall not be alienated, but shall continue in the hands of the donee in perpetuum.

Annotation: Validity And Effect Of Provision Or Condition Against Alienation, In Gift For Charitable Trust Or To Charitable Corporation, 100 ALR2d 1208, 1209 (1965). Accordingly, the donor's charitable interest is, generally, given greater weight than policies against the remoteness of vesting, and restrictions on alienation.

Thus, the reverter clause is enforceable and the property reverted to Atlantic under the terms thereof.

*Judgment reversed. All the Justices concur.*

DECIDED NOVEMBER 24, 1993 —
RECONSIDERATION DENIED DECEMBER 17, 1993.

*F. Robert Raley*, for appellant.
*F. Bradford Wilson, Jr., G. Boone Smith III*, for appellees.