[No. 67529-5. En Banc.]
Argued September 14, 1999.    Decided February 10, 2000.
SHOREWOOD WEST CONDOMINIUM ASSOCIATION, *Respondent*,
v. ASGHAR SADRI, ET AL., *Petitioners*.

*Landerholm, Memovich, Lansverk & Whitesides, P.S.,* by *Zachary Harry Stoumbos* and *Jean Marie McCoy,* for petitioners.

*Michael C. Simon*, for respondent.

Guy, C.J. — In this case, petitioners Asghar Sadri and Dorothy Grazul seek review of the Court of Appeals decision holding that the respondent Shorewood West Condominium Association's (Association) restriction on the leasing of condominium units was valid and could be applied to them.[1]

We reverse. We first hold that because the property rights of individual condominium unit owners are creations of a condominium statute and are subject to that statute, restrictions on leasing adopted after the owners purchased their unit may be applied to such owners if the restrictions are in accordance with the statute. Such leasing restrictions, if in accord with the statute, may be applied to Sadri and Grazul. Nevertheless, we also hold that a restriction on use which appears in a condominium apartment owners association's bylaws but not in its declaration is not in accordance with the Horizontal Property Regimes Act, RCW 64.32. The Association may not promulgate a restriction on leasing in a bylaw without first amending its declaration. The bylaw restricting leasing is invalid and this court may not enforce it.

Having decided this case by finding the lease restriction not in accordance with the statute, we need not reach the further issues of how we should review condominium association rules and whether the restriction on leasing was equally applied. We leave for another day the question of

---

[1]Although "Shorewood West Condominium Association" is the respondent in this case, respondent's briefs also use the name "Shorewood West Owners Association." The two names seem to be interchangeable, and our abbreviation ("Association") refers to either.

whether to adopt a standard of review for condominium association rules. We reverse the award of attorney fees and award fees to Sadri and Grazul.

## FACTS

The declaration establishing Shorewood West as a condominium under the Horizontal Property Regimes Act dates from 1978. Clerk's Papers at 24. The declaration contains this restriction on use: "the property, units and limited common areas as described herein are restricted and intended to be utilized solely for residential purposes, and no rental or lease shall be permitted for less than a 30-day term." Clerk's Papers at 16. The units are further restricted to single-family occupancy. Clerk's Papers at 16.

In the 1990s the Association's Board became concerned about the devaluation of the condominium units due to the percentage of units being rented. Clerk's Papers at 53. The Board received information from realtors and financial institutions that having a high percentage of rental units in a condominium can adversely affect the value of the units and affect the ability of prospective buyers of units to obtain financing. Clerk's Papers at 86; *see also* Clerk's Papers 87-104. As a solution to this problem, the Board recommended that the condominium owners pass an amendment to the Association bylaws which would prohibit owners from renting or leasing their units: "Shorewood West Condominiums are to be an owner-occupied development. Except for those units leased as of August 11, 1994, no owner may lease a unit. Upon the sale of any unit previously leased, it must be sold to an owner-occupant who will reside in the unit. Thereafter the unit will not be leased." Clerk's Papers at 79. The amendment and the rules implementing it allowed leasing for such exceptions as sabbatical, job relocation, and other special circumstances. Clerk's Papers at 83. On August 11, 1994, the amendment was approved by over 70 percent of the interests in the condominium. Clerk's Papers at 146-47. The declaration required only a majority of the percentage

votes of the unit owners to approve an amendment to a bylaw. Clerk's Papers at 18. The bylaws themselves required a 60 percent favorable vote of the percentage interests of the units to amend a bylaw. Clerk's Papers at 77.

Sadri and Grazul purchased Unit 7501 in Shorewood West Phase II Condominiums for $150,000 in December of 1993. Clerk's Papers at 121. An important consideration in their decision to purchase the unit was that they would be able to lease it if they decided not to reside in the unit. Clerk's Papers at 122. When Sadri and Grazul heard of the proposal to amend the bylaws to restrict leasing, they objected to the Association in writing and voted against the amendment. Clerk's Papers at 139, 123. Because the price for units in the Shorewood condominium had been declining, a restriction on leasing would force Sadri and Grazul to sell in a bad market if they ever decided not to occupy their unit. Clerk's Papers at 122. In the spring of 1995, they moved out of their unit and executed a lease in May with an effective date of July 1, 1995, nearly a year after the bylaw had been amended to restrict leasing. Clerk's Papers at 123-24.

On January 25, 1996, the Association, seeking a finding that the amendment of its bylaws was proper and that Sadri and Grazul must remove their tenants from their unit, filed a complaint for declaratory judgment and injunction. Clerk's Papers at 3, 6. The trial court found that although the Association had the authority to amend its bylaws to restrict leasing, the amendment was valid only as to those persons purchasing units after August 11, 1994. Clerk's Papers 259, 262. The amendment was unenforceable against existing owners, such as Sadri and Grazul. Clerk's Papers at 262. The trial court also awarded Sadri and Grazul $1,180 in attorney fees. Clerk's Papers at 263.

The Court of Appeals reversed in *Shorewood West Condominium Ass'n v. Sadri*, 92 Wn. App. 752, 754, 966 P.2d 372 (1998). Finding that Washington had not yet adopted a standard to review condominium rules, the court adopted a

reasonableness standard. *Id.* at 754, 756. Applying the standard to this case, the Court of Appeals held that the leasing restrictions were reasonable, that the amendments may apply retroactively to existing owners, and that "grandfathering" existing rentals is reasonable. *Id.* at 759-61. Attorney fees were awarded to the Association. *Id.* at 762.

Sadri and Grazul petitioned for review by this court.

## ISSUES

(1) Under the Horizontal Property Regimes Act, may a restriction on leasing adopted after owners of condominium units purchased their units be applied to those owners?

(2) Is a restriction on use which appears in a condominium homeowners' association bylaw but not in the declaration in accordance with the Horizontal Property Regimes Act?

## DISCUSSION

Sadri and Grazul claim that amendments which seriously restrict property rights are not applicable to those persons already owning the subject property. Pet. for Review at 9. In effect they argue that owners are bound only by those restrictions present in the condominium declaration at the time at which they purchased their unit.

All condominiums are statutorily created. Lewis A. Schiller, *Limitations on the Enforceability of Condominium Rules*, 22 Stetson L. Rev. 1133, 1135 (1993). In Washington, the statutory form of condominium was first authorized with the passage of the Horizontal Property Regimes Act. 2 Washington State Bar Ass'n, Real Property Deskbook § 41.5 (2d ed. 1986). All condominiums created in this state after July 1, 1990 come under another regime: the Condominium Act, RCW 64.34. RCW 64.34.010. Since Shorewood West Condominium was created in 1978, it is governed by the older act.

Because condominiums are statutory creations, the rights and duties of condominium unit owners are not the same as those of real property owners at common law. *McElveen-Hunter v. Fountain Manor Ass'n*, 96 N.C. App. 627, 386 S.E.2d 435, 436 (1989), *aff'd*, 328 N.C. 84, 399 S.E.2d 112 (1991). "Central to the concept of condominium ownership is the principle that each owner, in exchange for the benefits of association with other owners, 'must give up a certain degree of freedom of choice which he [or she] might otherwise enjoy in separate, privately owned property.' " *Noble v. Murphy*, 34 Mass. App. Ct. 452, 456, 612 N.E.2d 266 (1993) (quoting *Hidden Harbour Estates, Inc. v. Norman*, 309 So. 2d 180, 182, 72 A.L.R.3D 305 (Fla. Dist. Ct. App. 1975)). The rights given up by the unit owners are determined by the statute. RCW 64.32 makes all owners subject to the chapter and "to the declaration and bylaws of the association of apartment owners adopted pursuant to the provisions of this chapter." RCW 64.32.250(1). The chapter also states that each owner "shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either may be lawfully amended from time to time . . . ." RCW 64.32.060.

The court in *McElveen-Hunter* applied a statute similar to RCW 64.32 to a declaration amendment which restricted leasing and which was being challenged by a plaintiff who had bought her unit before the amendment was adopted. *McElveen-Hunter*, 386 S.E.2d 435. Like the Horizontal Property Regimes Act, the North Carolina statute permits restrictions to be imposed by the declaration or recorded instrument which submits the property to the provisions of the chapter and allows the unit owners to amend the declaration by following the procedures prescribed and makes the rules adopted binding upon all owners. *Id.* at 436. The court found that the amendment restricting leasing does not infringe upon any legal right of the plaintiff's because she had notice before the units were bought that the declaration was changeable. *Id.* Other cases have held that a duly adopted amendment either restricting occupancy or leasing is binding upon condominium unit owners who

bought their units before the amendments were effective. *See Hill v. Fontaine Condominium Ass'n*, 255 Ga. 24, 334 S.E.2d 690 (1985); *Ritchey v. Villa Nueva Condominium Ass'n*, 81 Cal. App. 3d 688, 146 Cal. Rptr. 695, 100 A.L.R.3D 231 (1978); *Seagate Condominium Ass'n v. Duffy*, 330 So. 2d 484 (Fla. Dist. Ct. App. 1976); *Kroop v. Caravelle Condominium, Inc.*, 323 So. 2d 307 (Fla. Dist. Ct. App. 1975).

The property rights that owners of individual condominium units have in their units are creations of the condominium statute and are subject to the statute, the declaration, the bylaws of the condominium association, and lawful amendments of the declaration and bylaws. An association may apply a restriction on leasing, if adopted in accordance with the statute, to current owners.

The Sadri and Grazul deed states that it is subject to the provisions of the Horizontal Property Regimes Act. Clerk's Papers at 126. Their argument that the leasing restriction cannot be applied to them fails because whatever property rights they have in their unit are creations of the statute and are subject to amendment in accordance with the statute. The amendment to the bylaws restricting leasing, if it is in accord with the statute, may be applied to Sadri and Grazul.

Sadri and Grazul contend that even if the restriction may be applied to them, the Association had no authority to do so because its actions were not in accord with the statute. Pet. for Review at 9-11. They argue that the statute requires that any leasing restriction must be included within the declaration. Pet. for Review at 10. Since the Association chose to amend its bylaws but not its declaration, the question before this court is whether a restriction on leasing which does not appear in the declaration is in accordance with the statute and enforceable.

The Horizontal Property Regimes Act, RCW 64.32, requires that the condominium declaration contain a statement of use restrictions: "The declaration shall contain the following: . . . (7) A statement of the purposes for which the building and each of the apartments are intended and

restricted as to use." RCW 64.32.090. Amendments to the declaration must be recorded in order to be valid. RCW 64.32.140. Amendments must receive the consent of at least 60 percent of the apartment owners. RCW 64.32.090(13). The Act does not state any voting or recordation requirements for bylaws.

In the Association's declaration the statement of the purpose of use provides:

> With the exception of the guest rooms located upon Floors 1 through 5, which are common areas and facilities, the property, units and limited common areas as described herein are restricted and intended to be utilized solely for residential purposes, and no rental or lease shall be permitted for less than a 30-day term. The daily rental and the terms and conditions governing the use of the guest rooms shall be determined by the Board of Directors in accordance with the Bylaws. Each unit and limited common area is restricted to single-family residential occupancy, and none of the common areas and facilities or limited common areas shall be utilized other than in service for and consistent with the units themselves and their stated purpose.

Clerk's Papers at 16.

Sadri and Grazul argue that RCW 64.32.090(7) requires that any leasing restriction must be included within the declaration. Pet. for Review at 10. The Association does not dispute that the provision requires all use restrictions to be in the declaration. The Association contends instead that the general practice of courts around the country is to allow restrictions on leasing to be in the bylaws as well as in the declaration. Answer to Pet. for Review at 15. The declaration is supposed to contain only the general outline of prohibitions with the specific prohibitions being contained in the bylaws and rules and regulations. Answer to Pet. for Review at 15. The Association's declaration's statement of purpose restricts the use of units to residential use as opposed to commercial, office, or industrial use. Answer to Pet. for Review at 16. However, a survey of the case law from different jurisdictions indicates that it is the general

practice to put specific restrictions, not merely restrictions on broad use categories, into the declaration, whether or not they may also be in the bylaws.

The following cases contain specific use restrictions in the declaration: *McElveen-Hunter v. Fountain Manor Ass'n*, 386 S.E.2d 435 (North Carolina case involving condominium declaration amendment restricting leasing); *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345, 659 N.E.2d 93, 95, 213 Ill. Dec. 463 (1995) (Illinois case involving condominium declaration amendment prohibiting leasing); *Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 732-33 (N.D. 1981) (North Dakota case involving prohibition of leasing in both declaration amendment and bylaw); *Hidden Harbour Estates, Inc. v. Basso*, 393 So. 2d 637, 638 (Fla. Dist. Ct. App. 1981) (Florida case in which restriction in declaration prohibiting improvements or changes in exterior appearance without Board approval at issue where defendants drilled a shallow well on their property); *Worthinglen Condominium Unit Owners' Ass'n v. Brown*, 57 Ohio App. 3d 73, 566 N.E.2d 1275, 1276 (1989) (Ohio case involving condominium amendment prohibiting leasing); *Nahrstedt v. Lakeside Village Condominium Ass'n*, 8 Cal. 4th 361, 367, 878 P.2d 1275, 1277, 33 Cal. Rptr. 2d 63 (1994) (California case involving provision in declaration prohibiting pets). Moreover, the Association's declaration itself contains specific use restrictions beyond the general restriction of use to residential use only. It limits residential use to single-family occupancy. Clerk's Papers at 16. It even discusses leasing and implicitly permits it for terms of longer than 30 days and explicitly allows daily rentals of guest rooms, subject to Board policy. Clerk's Papers at 16. Therefore, one should read "use" in RCW 64.32.090(7) to mean all uses and not just general categories of use such as residential use or commercial use. The provision requires that all restrictions on use should be in the declaration's statement of purpose.

The Association also argues that it does not matter whether the restrictions appear in the bylaws or in the dec-

laration because the statute requires Sadri and Grazul to be bound by both. RCW 64.32.250(1) states in part: "All apartment owners . . . shall be subject to this chapter and to the declaration and bylaws of the association of apartment owners *adopted pursuant to the provisions of this chapter.*" (emphasis added). RCW 64.32.060 contains a similar directive: "Each apartment owner shall comply strictly with the bylaws and with the administrative rules and regulations adopted pursuant thereto, as either may be *lawfully* amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment." (emphasis added). The italicized phrases indicate that the provisions are qualified in some way. We read them as indicating that owners need comply only with those bylaws that are consistent with or in accordance with this chapter. The proper procedure for amending or adopting a bylaw must be followed; an association seeking to restrict a use in a bylaw must first amend its declaration if the declaration allows the use. RCW 64.32.250(1) and 64.32.060 direct that owners are subject to and must comply with only those bylaws which are in accordance with the chapter. Since use restrictions must be in the declaration and any unrecorded amendments to the declaration are invalid (RCW 64.32.140), use restrictions appearing in unrecorded amendments to bylaws and not in the declaration are invalid. Sadri and Grazul need not comply with the bylaw restricting leasing because it is invalid. The statute does not allow an association of apartment owners to restrict leasing in a bylaw where the declaration itself permits leasing.

## CONCLUSION

When the Association promulgated a restriction on leasing in a bylaw without first amending the condominium declaration, it did not act in accordance with the Horizontal Property Regimes Act. The bylaw is invalid and this court may not enforce it. Reversed. Attorney fees are awarded to Sadri and Grazul.

58

SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., and SWEENEY, J. PRO TEM., concur.

Reconsideration denied April 21, 2000.